IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLEEN CHEPLIC, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:13-cv-701 |
| | ) |
| v. | ) Judge Mark R. Hornak |
| | ) |
| CAROLYN COLVIN,[1] | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

### I. INTRODUCTION

Plaintiff, Darleen Cheplic, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403.

### II. BACKGROUND

#### A. Facts

Plaintiff was born on August 21, 1961. (Tr. 39). She graduated from high school, did not attend college, and her past relevant work includes employment as a bookkeeper and an accounting clerk. *Id.* Plaintiff alleges disability as of February 1, 2009, *id.* at 103, due to post-traumatic stress disorder, depression, lack of concentration, arthritis, and neck and back pain, *id.*

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History - Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (last visited on July 31, 2014). As a result, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); Fed. R. Civ. P. 25(d).

at 135. The record reflects that Plaintiff has not engaged in substantial gainful work activity since February 1, 2009.

### B. Procedural History

Plaintiff protectively filed an application for DIB on April 14, 2010, claiming total disability since February 1, 2009. *Id.* at 11. An administrative hearing was held on November 30, 2011, before Administrative Law Judge James Bukes ("ALJ"). *Id.* at 35. Plaintiff was represented by counsel and testified at the hearing. *Id.* Tania Shullo, an impartial vocational expert, also testified at the hearing. *Id.*

On December 12, 2011, the ALJ rendered a decision unfavorable to Plaintiff in which he found that Plaintiff retained the ability to perform jobs that exist in significant numbers in the national economy and therefore, Plaintiff was not "disabled" within the meaning of the Act. *Id.* at 30. The ALJ's decision became the final decision of the Commissioner on May 3, 2013, when the Appeals Council denied Plaintiff's request to review the ALJ's decision. *Id.* at 1.

On May 20, 2013, Plaintiff filed her Complaint in this Court seeking judicial review of the ALJ's decision. The parties have filed cross-motions for summary judgment. For the reasons that follow, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

## III. LEGAL ANALYSIS

### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial

evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).[2]

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423(d)(1). This may be done in two ways:

---

[2] In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. Compare 20 C.F.R. § 416.920 with § 404.1520."); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II [DIB] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating claimants' burden of proving disability is the same for both DIB and SSI).

3

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. pt. 404, subpt. P, app. 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that the claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy," *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423(d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes the claimant from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that the claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given the claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns*, 312 F.3d at 119.

Where a claimant has multiple impairments that may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(B) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the

individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process after determining that, considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

B. **Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff does not challenge the entirety of the ALJ's conclusion that she was not disabled under the Act. Rather, Plaintiff contends that the ALJ erred in failing to consider the possibility of a closed period of disability from February 2009 to June 2010, when her treating pain management physician, Dr. Bud Lateef, found Plaintiff capable of light work. Pl.'s Br. in Supp. of Summ. J. ("Pl.'s Br."), ECF No. 13, at 6. The Commissioner contends that the decision of the ALJ should be affirmed because substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled between February 2009 and June 2010. Def.'s Br. in Supp. of Summ. J. ("Def.'s Br."), ECF No. 17, at 11.

In order to establish a disability under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [her] from engaging in any

5

'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services,* 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). Under 20 C.F.R. § 404.620, a claimant's application for DIB will remain in effect until the date that the ALJ issues a hearing decision. Thus, the ALJ analyzed Plaintiff's disability claim for a "medically determinable basis for an impairment that prevented [her] from engaging in any substantial gainful activity for a statutory twelve-month period" within the time frame provided by Plaintiff's DIB application – from her alleged onset date of February 1, 2009, through the date of the ALJ's decision, December 12, 2011. *See* Tr. 11.[3]

Plaintiff contends that "for the time period from [] February 2009 through June 2010 [] there is ample evidence of the inability to work, which is something that the ALJ never considered or entertained." Pl.'s Br. at 6. The linchpin of Plaintiff's argument is that Plaintiff's "extensive treatment [during that period] culminated in Dr. Lateef finding his patient capable of light work by June 2010," thereby warranting a finding that Plaintiff was disabled for the closed period of time between February 2009 and Dr. Lateef's June 2010 assessment. *Id.*

In his June 18, 2010 Medical Source Statement about Plaintiff, Dr. Lateef concluded that Plaintiff was capable of lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently, based on his last examination of Plaintiff on May 18, 2010. (Tr. 396-97). Dr. Lateef also concluded that Plaintiff had no limitations in standing, walking, sitting, pushing, pulling, or postural activities, and no environmental restrictions or limitations in other physical functions. *Id.*

---

[3] On this point, Plaintiff testified at the administrative hearing on November 30, 2011 that she stopped working in February of 2009, and remained disabled at the time of the hearing. (Tr. 40-53).

6

By grounding her closed-period argument in this June 2010 finding of Dr. Lateef, Plaintiff incorrectly implies that Dr. Lateef had previously given Plaintiff a more restrictive assessment of her abilities to perform physical work-related activities, such that his June 2010 assessment was a prospective assessment, rather than an assessment that was both prospective and retrospective. Indeed, nothing in the ALJ's discussion of Dr. Lateef's treatment records, which extended from August 25, 2009 through September 13, 2011, *see* (Tr. 22), or, for that matter, in the records themselves, reveals any marked change in Plaintiff's condition by June 2010 that would warrant the ALJ considering June 18, 2010 as the "start date" for Plaintiff's purported new ability to engage in light work activity, and thereby render the ALJ's decision unsupported by substantial evidence.

Rather, the ALJ's decision points to sufficient record evidence to support the conclusion that, for the whole period between February 1, 2009 and the date of the ALJ's decision, Plaintiff was not "disabled" within the meaning of the Act. *See, e.g., id.* at 22 (the ALJ noting Dr. Lateef's initial finding that Plaintiff suffered from cervicalgia[4] and myofascial[5] pain); *id.* (the ALJ noting that NovaCare Rehabilitation records confirm that Plaintiff received physical therapy for cervicalgia and lumbago[6] from August 2009 through October 2009 and had a good prognosis at the time of discharge); *id.* (the ALJ noting that Dr. Lateef prescribed pain-relieving medication as of the initial assessment and determined that Plaintiff was not taking any pain medications at

---

[4] "Cervicalgia" refers to "[d]iscomfort or more intense forms of pain that are localized to the cervical region. This term generally refers to pain in the posterior or lateral regions of the neck." *See* Medical Dictionary, U.S. National Library of Medicine, *available at* http://www.nlm.nih.gov (last visited July 31, 2014).

[5] "Myofascial" is defined as "[o]f or relating to the fascia surrounding and separating muscle tissue." STEDMAN'S MEDICAL DICTIONARY 1272 (28th ed. 2006).

[6] "Lumbago" is "pain in mid and lower back; a descriptive term not specifying cause." STEDMAN'S MEDICAL DICTIONARY 1121 (28th ed. 2006).

the time of her September and October 2009 visits); *id.* (the ALJ noting that Dr. Lateef ordered a CT scan of Plaintiff's cervical spine in October 2009, which demonstrated no fracture or traumatic subluxation[7] of the cervical spine); *id.* (the ALJ noting that Dr. Lateef's records indicate that he performed several left cervical facet medial branch blocks and that Plaintiff "was noted to have successful facet blocks on the left side with some resolution of her pain").

Furthermore, the ALJ explained in his decision that while he was incorporating Dr. Lateef's June 18, 2010 lifting restriction of 20 pounds occasionally and 10 pounds frequently into his RFC determination, he viewed Dr. Lateef's June 2010 assessment in the context with the record before him and not as an "endpoint" for any limitations in standing, walking, or sitting. *Id.* at 27. This is reflected in the ALJ's ultimate conclusion that "the evidence at the hearing level justifies a restriction to the light exertional level with respect to standing, walking, and sitting as well as the need to alternate sitting with standing given her continued complaints of back and neck pain." *Id.*

Relative to Plaintiff's complaints of pain, the ALJ also discussed the findings of and treatments administered by Dr. Edward Poon, an orthopedic specialist whose records address the period from August 5, 2009 through January 17, 2010, which is within Plaintiff's alleged closed period of disability. *Id.* at 23. The ALJ pointed out that Dr. Poon found, among other things, that (1) "the prior knee films of February 2009 did not reveal any significant DJD of the knee" despite that Plaintiff "complained of having a lot of knee pain, especially with stair climbing and descending;" (2) "[b]ased on the examination findings, he believed that [Plaintiff] had sustained a cervical strain and referred her to Dr. Lateef for pain management and evaluation of the

---

[7] "Subluxation" is defined as "[a]n incomplete luxation or dislocation; although a relationship is altered, contact between joint surfaces remains." STEDMAN'S MEDICAL DICTIONARY 1856 (28th ed. 2006).

8

cervical spine;" (3) on October 27, 2009, Dr. Poon performed arthroscopy to repair the partial medial and lateral meniscectomies, and "noted that she was ambulating without an assistive device and only a trace limp at the initial postoperative visit;" (4) that Plaintiff "continued to complain of medial[8] sided knee pain especially with ambulation and stair climbing and descending at the following visits in December 2009 and January 2010;" and (5) that "[i]n the last documented visit in January 2010 Dr. Poon noted that she was better from having the surgery but was not completely better at that point," while the "examination findings in January 2010 showed full range of motion of the knee" and Plaintiff "was to return on an as needed basis." *Id.* at 24.

Ultimately, the ALJ found that "[t]he monthly office notes documented the claimant's reports of pain and associated functional difficulties, primarily with lifting, climbing steps, and getting up and down. However, the examination findings consistently noted normal cervical posture on examination with normal gain, motor, sensory, and reflexes. The notes also document the patient's reports of tenderness to palpation of the bilateral c-spine paraspinals. She has a decreased range of motion upon extension." *Id.* at 28.

There is simply no indication that the ALJ, as Plaintiff contends, "never entertained" or even "considered" whether Plaintiff was disabled between February 2009 to June 2010. His decision is sufficiently supplied with examples to the contrary. This Court concludes that the ALJ's finding that Plaintiff did not have a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period" at any time between February 1, 2009, her alleged onset date, and the date of the ALJ's

---

[8] "Medial" is defined as "[r]elating to the middle or center." STEDMAN'S MEDICAL DICTIONARY 1167 (28th ed. 2006).

decision, is supported by substantial evidence. *See Stunkard v. Secretary of Health and Human Services,* 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1).

Plaintiff does cite to two district court cases outside our circuit, *McKoy v. Colvin,* 2013 WL 5231524 (D.S.C. 2013) and *Vickers v. Colvin,* 2013 WL 3464324 (W.D. Ark. 2013), for the proposition that "there is precedent for remands to be issued where an ALJ did not consider the possibility of a closed period," Pl.'s Br. at 6, which, as this Court noted, is not the case here. Regardless, these cases are distinguishable on other grounds, as well. In *McKoy,* two of the plaintiff's treating physicians included temporary restrictions for a statutory twelve-month period in their uncontradicted opinions of the plaintiff's condition, such that the *McKoy* court concluded that the ALJ should have considered a closed period of disability, instead of relying on two functional capacity evaluations completed by the plaintiff's physical therapists, after that period of temporary restriction, to support the conclusion that the plaintiff was able to perform light work. *McKoy,* 2013 WL 5231524, at *3-4. The record does not reveal, nor does Plaintiff argue, that any of Plaintiff's treating physicians specifically included uncontradicted temporary restrictions for a statutory twelve-month period in their opinions that the ALJ ignored.

As for *Vickers,* the district court concluded in that case that the ALJ erred in giving substantial weight to the opinions of the agency physicians who did not have the benefit of the plaintiff's complete medical record or an in-person examination of the plaintiff, and erred in giving insufficient weight to the opinion of the plaintiff's treating physician who was the only physician to render an opinion about the plaintiff's physical limitations. *Vickers,* 2013 WL 3464324, at * 4. Again, Plaintiff does not make that argument here, nor does this Court conclude that the ALJ made such a mistake.

## IV. CONCLUSION

Under the applicable standards of review and the current state of the record, this Court concludes that the ALJ's decision should be affirmed as it is supported by substantial evidence - "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 401 – and thus, this Court must defer to the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Act, for any twelve-month period between her alleged onset date of February 1, 2009 and the date of the ALJ's decision. For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: 7-31, 2014

cc: All counsel of record